L. E. WATERMAN COMPANY *v.* MODERN PEN COMPANY.

MODERN PEN COMPANY *v.* L. E. WATERMAN COMPANY.

APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 54, 72. Argued November 10, 1914.—Decided November 30, 1914.

When the use of his own name upon his goods by a later competitor will and does lead the public to understand that such goods are the product of a concern already established and well known under that name, and when the profit of the confusion is known to, and, if that be material, is intended by the later man, the law will require him to take reasonable precautions to prevent the mistake. *Herring-Hall-Marvin Co.* v. *Hall's Safe Co.*, 208 U. S. 554.

There is no distinction between corporations and natural persons in the above principle, which is one to prevent a fraud.

All the protection which a manufacturer is entitled to get against a later person of the same name manufacturing similar goods is to require the later person to so use his name in marking his goods that they cannot be confused with the earlier manufacturer, and this

though one of the motives of the later person was to obtain an advantage by the use of his own name.

While the transfer of a person's name without any business may not be enough to entitle the transferee to prevent others from using the name, it still is a license that may be sufficient to put the licensee on the footing of the licensor against another party of the same name.

Two courts below having upheld arrangements as effective in giving a licensee of the right to use a name the same protection which the licensor would have had as against another party of the same name, this court will not go into any consideration of the facts on which such arrangement was based.

197 Fed. Rep. 534, 536, affirmed on cross appeals with costs equally divided between both parties.

THE facts, which involve the use of the name Waterman in connection with the manufacture and sale of fountain pens, are stated in the opinion.

*Mr. Walter B. Raymond* and *Mr. Oliver Mitchell,* with whom *Mr. Victor C. Cormier* and *Mr. Mortimer W. Byers* were on the brief, for the L. E. Waterman Co.:

The burden of proof is upon the defendant company to prove the affirmative defense set up by the answer, namely, that the defendant, Modern Pen Company, is selling pens made by a partnership rightfully doing business under the name "A. A. Waterman & Co." and rightly making and marking the same with the firm name. *Jacobs* v. *Beecham,* 221 U. S. 263.

The only evidence in support of its affirmative defense is a paper unsupported by any evidence that it was ever followed by any acts constituting partnership action. This is not sufficient to prove a partnership. *Gray* v. *Gibson,* 6 Michigan, 300; *Davis* v. *Key,* 123 U. S. 79.

The testimony of A. A. Waterman taken in the plaintiff's *prima facie* case shows that the alleged firm was to do nothing, that it had no function, that it was a paper firm, that the Modern Pen Company while ostensibly the selling agent for a manufacturing firm of A. A. Waterman & Co.,

actually conducted the entire business; that A. A. Waterman, as a member of the alleged firm, had no management, had no functions and under the firm was a salesman for the Modern Pen Company. The defendant did not produce any evidence to show that the alleged firm ever manufactured or did anything. Under these circumstances the rule is applicable that where proof would be easy, if it existed, and it is not made, the presumption is that rebutting proof cannot be made. *Kirby* v. *Tallmadge*, 160 U. S. 379; *Pac. S. S. Co.* v. *Bancroft*, 94 Fed. Rep. 180; *Penn. R. R. Co.* v. *Anoka Bank*, 108 Fed. Rep. 482.

The alleged partnership agreement is a fraud and a sham and a mere colorable device to enable the defendant to place the name "Waterman" on its pens. *R. Heinisch's Sons Co.* v. *Boker*, 86 Fed. Rep. 765; *Abel Morrall, Ltd.*, v. *Hessin & Co.*, 20 R. P. C. 429.

The Chapman-Waterman aggregation did not take over any going business. Waterman had no good-will to grant and no going business to which any good-will could be appurtenant. As to the alleged grant of a right to use Waterman's personal name, such a right cannot be granted in gross. *Thorneloe* v. *Hill*, 11 R. P. C. 61–1894 (Ch. Div.); *Burrow* v. *Marceau*, 124 A. D. (N. Y.) 665.

This case rests upon the proposition of whether or not a man has the right to cede by contract the use of his name to strangers to that name for the purpose of competition with an already established business. *R. Heinisch's Sons Co.* v. *Boker*, 86 Fed. Rep. 765; *Abel Morrall, Ltd.*, v. *Hessin & Co.*, 20 R. P. C. 429; *International Silver Co.* v. *Rogers*, 118 Fed. Rep. 133; *National Distilling Co.* v. *Century Co.*, 183 Fed. Rep. 206; *Royal Baking Powder Co.* v. *Royal*, 122 Fed. Rep. 343; *Garrett* v. *Garrett*, 78 Fed. Rep. 472.

The question of the right of Arthur A. Waterman to use his personal name in the conduct of his business is in no way raised by this proceeding.

The question for decision is as to the right of a corporation to use a personal name in the selling of goods.

The defendant has encouraged the use of the name "Waterman" by its dealers and agents and has sought to unfairly profit by the resulting confusion in the trade.

The defendant having failed to sustain the burden of proving its affirmative defense that it is the selling agent of a valid existing partnership actually manufacturing the pens sold by it and rightfully marking the same with the name "A. A. Waterman & Co.," should be absolutely enjoined from using the name "Waterman."

*Mr. Alexander S. Bacon* for the Modern Pen Company:

A. A. Waterman had been in the fountain pen business since before 1898, when under a decree in an action between the L. E. Waterman Company and himself and another, he was expressly permitted to do business under the firm name of A. A. Waterman & Co., but was prevented from doing business under the corporate name of the A. A. Waterman Pen Company. Since that date he has been continuously in the fountain pen business. On the reorganization in 1905, of an old firm of A. A. Waterman & Co. in which he was interested, a new firm was organized consisting of himself and the Messrs. Chapman. Under the copartnership agreement he retired from the eastern field and took over the western field in 1906, assigning his good will and the use of his name to his partners, the present firm of A. A. Waterman & Co., of which the Modern Pen Company is the sole selling agent.

A trade-mark or trade-name is assignable. *Burden* v. *Stratton,* 12 Fed. Rep. 696; *Brown Chemical Co.* v. *Meyer,* 139 U. S. 540.

There is no confusion except that slight confusion which arises from the similarity of names, against which courts will grant no relief. *Meneeley* v. *Meneeley,* 62 N. Y. 432.

The court below required the use of the firm name,

Arthur A. Waterman & Co. together with a suffix "Not connected with the L. E. Waterman Company." The suffix is much longer than the name, is inartistic and obnoxious to all parties. There are now at least twelve firms in the silverware business bearing the name of Rogers. If a man named John Doe Rogers should now start in the silverware business, he might be required in all his advertisements and on all his wares to use in addition to his own name of John Doe Rogers, thirteen separate and distinct suffixes "Not connected with the J. Rogers Silverware Company," "Not connected with the William Rogers Manufacturing Company," etc. This extreme example shows the impropriety of such a suffix.

A. A. Waterman was properly so named before the L. E. Waterman Company was organized. He had a right to use his own name, notwithstanding the fact that some one else had organized a corporation before he went into business. The plaintiff brought the trouble upon itself by selecting a family name for a corporate name. Such a suffix is unprecedented and unwarranted. Arthur A. Waterman & Co. is not sufficiently like L. E. Waterman Company to lead to confusion.

The elements of simulation, or inferior goods, or recent entry into the field, do not enter into this question. The defendant is not accused of simulating the plaintiff's wares. The A. A. Waterman fountain pen is the best that modern art can produce, and A. A. Waterman & Co. manufacture everything connected with their own pens while the plaintiff does not. It merely assembles the parts bought from others.

A. A. Waterman has been in business under his own name for many years and assigned his trade name to his partners on retiring from the firm. In these circumstances the new firm of A. A. Waterman & Co. has an absolute right at common law and by statute to the use of their trade-name, unfettered by any suffix. *Tussaud* v. *Tus-*

*saud,* L. R. 44 Chanc. Div. 678; *Herring-Hall-Marvin Safe Co.* v. *Hall's Safe Co.,* 208 U. S. 554; *Rathbone, Sard & Co.* v. *Champion Steel Range Co.,* 189 Fed. Rep. 26.

MR. JUSTICE HOLMES delivered the opinion of the court.

This suit was brought by the L. E. Waterman Company to enjoin the Modern Pen Company from using in connection with the manufacture and sale of fountain pens, other than those of the plaintiff's make, the name A. A. Waterman or any name containing the word Waterman in any form, and for an account. The decision of the Circuit Court of Appeals upon an order for a preliminary injunction is reported, 183 Fed. Rep. 118; 105 C. C. A. 408; that of the District Court upon the merits, 193 Fed. Rep. 242; and that of the Circuit Court of Appeals, 197 Fed. Rep. 534; 197 Fed. Rep. 536; 117 C. C. A. 30; 117 C. C. A. 32. The final decree, in the parts material here, restricted the defendant to using the name Arthur A. Waterman & Co. instead of A. A. Waterman & Co., and required the words 'not connected with the L. E. Waterman Co.' to be juxtaposed in equally large and conspicuous letters when the permitted name was marked upon any part of the fountain pen sold by the defendant or upon boxes containing such pens, and whenever the name was used by way of advertisement or otherwise to denote any fountain pens made or sold by the defendant, or to, denote that it was the maker or seller of such pens. 183 Fed. Rep. 118. 193 Fed. Rep. 242, 248. 197 Fed. Rep. 534, 535, 536. See further *L. E. Waterman Co.* v. *Standard Drug Co.,* 202 Fed. Rep. 167, 171. 120 C. C. A. 455, 459. The bill besides alleging diversity of citizenship and unfair competition seemingly relied upon the registration of 'Waterman's' and 'Waterman's Ideal Fountain Pen, N. Y.' as trade-marks under the Act of Congress of March 3, 1881, c. 138, 21 Stat. 502, as a ground of juris-

diction. *Jacobs* v. *Beecham*, 221 U. S. 263, 274. Both parties appeal.

The defendant's appeal is from the requirements that it use the name Arthur A. Waterman & Co. instead of A. A. Waterman & Co. and that it juxtapose the words 'not connected with the L. E. Waterman Co.' After the finding of two courts and upon the evidence it must be assumed that the defendant had used the name Waterman in such a way as to mislead the public and to interfere with the plaintiff's rights unless the defendant had the right to use the name as matter of law because it was the selling agent of a firm calling itself A. A. Waterman & Co. and deriving its name from a man who started in business long after the plaintiff had acquired whatever rights it has. In support of this proposition the defendant lays hold of language in *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict*, 198 U. S. 118, 140, and in other books, to the effect that courts will not interfere with the use of a party's own name 'where the only confusion, if any, results from a similarity of the names and not from the manner of the use.' But, whatever generality of expression there may have been in the earlier cases, it now is established that when the use of his own name upon his goods by a later competitor will and does lead the public to understand that those goods are the product of a concern already established and well known under that name, and when the profit of the confusion is known to and, if that be material, is intended by the later man, the law will require him to take reasonable precautions to prevent the mistake. *Herring-Hall-Marvin Safe Co.* v. *Hall's Safe Co.*, 208. U. S. 554, 559. There is no distinction between corporations and natural persons in the principle, which is to prevent a fraud. *Ibid. Howe Scale Co.* v. *Wyckoff, Seamans & Benedict*, 198 U. S. 118, 136. *Donnell* v. *Herring-Hall-Marvin Safe Co.*, 208 U. S. 267, 273. In the *Howe Scale Co. Case* it was stated upon the same page

with the passage quoted that 'defendant's name and trade-mark were not intended or likely to deceive.'

The only other ground for the defendant's appeal that needs a word after the findings below is a decree of the Supreme Court of New York in a suit by the plaintiff against Arthur A. Waterman and Edward L. Gibson, partners doing business as the A. A. Waterman Pen Company of New York and Boston. The defendant alleges that it has succeeded to A. A. Waterman's rights. The decision found in the strongest terms that the name was used with fraudulent intent and the decree in some detail enjoined the defendant from using that or any corporate name containing the word 'Waterman,' and from using in connection with the business of making or selling fountain pens the word Waterman alone or with others in such collocation with the word pen as to indicate that such pens were a variety of Waterman's fountain pens. This rather damaging decree is thought to give some help because of a following sentence to the effect that the defendants were not prohibited from indicating that their pens were made or sold for or by Arthur A. Waterman & Co. or A. A. Waterman & Co. But that sentence was subject to the previous prohibition and consistent with it. The present defendant still not only may indicate the source of its pens in undeceptive ways but may mark them Arthur A. Waterman & Co. if only it add words that prevent the fraud that it insists upon the right to effect. It is unnecessary to go into other considerations presented by the record to show that the defendant's appeal cannot be maintained.

The plaintiff's appeal is from the failure of the decree to prohibit the use of the name Arthur A. Waterman & Co. even with the suffix required by the court. The ground upon which it claims this broader relief is that the agreement with A. A. Waterman by which he purported to become a partner in the firm of A. A. Waterman & Co.

was a sham, that the firm does not make the pens sold by the defendant, and that all the arrangements between Waterman the firm and the defendant were merely colorable devices to enable the defendant to get the name upon its pens. If we were to adopt this view of the facts the nature of the parties' rights and powers perhaps might need a more careful discussion than, so far as we are aware, it has received as yet. Under the decree in its present form the plaintiff gets all the protection to which it is entitled as against another Waterman who has established himself in the business, even though one of his motives for going into it was the hope of some residual advantages from the use of his own name. If with the warning, that the law decrees sufficient to prevent a fraud a second Waterman could go into the business and give it his name, the question occurs whether a man might not change his name to Waterman and do the same thing, and, if so, whether the nature of the defendant's title to the name is any concern of the plaintiffs—whether in short the protection now granted is limited by reason of a personal privilege or is the measure of the plaintiff's rights as against the world. We express no opinion upon the point beyond saying that it would have to be considered before the plaintiff could obtain a broader decree. For the purposes of decision we give the plaintiff the benefit of the doubt.

Whatever view may be taken of the agreements, there is no question that they were intended, with A. A. Waterman's assent, to authorize the use of his name in a business that he had pecuniary reasons for wishing to see succeed. He purported to transfer to the partnership the good will attaching to his name. While it very well may be true that the transfer of a name without a business is not enough to entitle the transferee to prevent others from using it, it still is a license that may be sufficient to put the licensee on the footing of the licensor as against the plaintiff. Moreover two courts have upheld the arrangements

as effective to give the defendant the protection of such rights as A. A. Waterman would have had in establishing a business after the plaintiff, and therefore we shall not go into any consideration of the facts.

It cannot be said the partnership agreement was ineffectual for the present purpose as matter of law. The object is pretty plain, but it is none the worse for that. The leading features are as follows: A partnership is formed under the name A. A. Waterman & Co. Contributions of capital are to be deemed loans and bear interest. The two partners other than Waterman have the management of the business and alone can sign negotiable paper and contracts. The business is to make, buy and sell fountain pens, and the defendant corporation is to be formed, (the parties to be interested in it) and is to be the sole selling agent of the firm. Waterman grants to the firm the exclusive use of his own and the firm names in connection with the business, and all the good will attaching to either. The Continent is divided into two defined districts, and Waterman has the exclusive right to do business under the name A. A. Waterman & Co. in the Western District, if he begins it before July 1, 1906, and the remaining members the exclusive right to the Eastern District. In any event Waterman leaves the present firm at that date. Each party has the free use of all patents, trade-marks and trade-names within their territories that either party has or may acquire. Eastern Territory goods are to be marked 'A. A. Waterman & Co., New York' and those made in the Western, 'A. A. Waterman & Co., (or some similar name) Chicago.' Waterman covenants not to compete for thirty-six years, or to use or allow the use of his name except as provided. Finally if Waterman does not go into independent business he is to have the exclusive agency for the Western Territory for the thirty-six years, and his commissions are fixed in detail and with care.

As we have said we do not reopen the matters of fact that must be taken to have been found by the two courts. So we assume that there was nothing to hinder Waterman from making this agreement and that the defendant was organized and acted under it. Whether he had more or less good will to convey perhaps is not very material. We are not prepared to say as matter of law that a man who for years has been trying to do business, may not join a partnership for a long time enough to start it with his name and whatever good will he has, and provide that thereafter he will divide territory as above stated or become a selling agent, at his choice. The obvious motive is met by the protection given in the decree, but does not deprive him of all rights in his name. A sufficient interest is disclosed to sustain the transfer as against the plaintiff and to free the defendant from a greater liability than would have fallen on A. A. Waterman had he gone on alone.

*Decree affirmed.*

MR. JUSTICE PITNEY:

In No. 72, the appeal of the Modern Pen Company, I concur in the result.

In No. 54, the appeal of the L. E. Waterman Company, I dissent from the conclusion reached by the court. It seems to me that the alleged partnership agreement of June 12, 1905, made between Arthur A. Waterman and others, pursuant to which the Modern Pen Company was organized and under which it claims the right to use the name of "A. A. Waterman" and "A. A. Waterman & Co.," appears upon its face to be a mere sham and a fraudulent device, and is demonstrated to be such by the other evidence. The case presents no question respecting the right of an individual to the *bona fide* use of his name, but rather the question whether a partnership or a corporation can,

by purchase or otherwise, obtain the right to use the name of a third party for the very purpose of employing it in unfair competition with the established business of still another party. The case in its circumstances closely resembles *International Silver Company* v. *Rogers Corporation*, 67 N. J. Eq. 646, and, for reasons sufficiently indicated by a reference to that case, I think the Modern Pen Company should be unqualifiedly enjoined from using the name "Waterman."