### NATIONAL CIGAR STANDS CO. v. FRISHMUTH BRO. & CO., Inc.

(Court of Appeals of District of Columbia. Submitted January 15, 1924. Decided March 3, 1924.)

. No. 1624.

1. **Trade-marks and trade-names and unfair competition ⬚⟾43—Opposition of National Cigar Stands Company to registration of mark "Nationals" sustained.**

The National Cigar Stands Company, a corporation, having been engaged in selling cigars, cigarettes, etc., since 1905, its opposition to registration by a competitor of the mark "Nationals," which competitor adopted in 1920 as a trade-mark for cigarettes, will be sustained.

2. **Trademarks and trade-names and unfair competition ⬚⟾10—Ordinary surname may not be appropriated as mark.**

An ordinary surname may not be appropriated as a trade-mark by any one person as against others of the same name using it for a legitimate purpose.

3. **Trade-marks and trade-names and unfair competition ⬚⟾73(1)—Later competitor, using own name, must take precautions to prevent confusion.**

While an individual or corporation has no right to the exclusive right of a name to which others have a common right of use as a surname or corporate title, the later competitor must take reasonable precautions to prevent confusion.

4. **Trade-marks and trade-names and unfair competition ⬚⟾43, 73(1)—Purpose of provision prohibiting registration of party's name.**

The provision of the Trade-Mark Act (Comp. St. § 9490) that no mark shall be registered which consists merely in the name of an individual firm or corporation not written in some distinctive manner does not permit the appropriation of the good will of an established concern, built up under its name, through adoption of that or a similar name as a trade-mark. The real purpose of this provision was to permit the registration of a concern's name as a trade-mark, provided such registration was accomplished, so as not to prevent a like use of the name by others similarly entitled.

5. **Trade-marks and trade-names and unfair competition ⬚⟾41—Object of Trade-Mark Act stated.**

The object of the Trade-Mark Act (Comp. St. § 9485 et seq.) is to protect honest dealers; to prevent, and not promote, confusion.

Appeal from the Commissioner of Patents.

Application by Frishmuth Bro. & Co. for the registration of a trade-mark, opposed by the National Cigar Stands Company. From a decision dismissing the opposition, opposer appeals. Reversed.

Arthur W. Murray, of Boston, Mass., for appellant.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. This appeal involves a decision of an Assistant Commissioner of Patents, reversing the Examiner of Interferences and dismissing the opposition to the registration by Frishmuth Bro. & Co., Inc., of the word "Nationals" as a trade-mark for cigarettes.

⬚⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In July of 1905 the National Cigar Stands Company was incorporated under the laws of the state of New Jersey. In March of 1914 it was succeeded by the National Cigar Stands Company, incorporated under the laws of the state of Massachusetts. The earlier corporation actively engaged in the business of advertising and selling throughout the United States cigarettes, cigars, smoking tobacco, etc.; this business being continued in the same way by the later corporation. In December of 1920 Frishmuth Bro. & Co., Inc., of Philadelphia, Pa., applied for the registration of the word "Nationals" as a trade-mark for cigarettes, alleged in its application use of the mark since January 1, 1920, and submitted with its application the following drawing as representing the mark:

[1] The Assistant Commissioner ruled that, under the decision of the Supreme Court of the United States in Beckwith v. Com. of Patents, 252 U. S. 538, 40 Sup. Ct. 414, 64 L. Ed. 705, no mark should be refused registration which consisted  merely in the name of a corporation, if written in some distinctive manner, and, finding that appellant's mark was so written, reversed the decision of the Examiner of Interferences and dismissed the opposition. The Assistant Commissioner's decision involved a complete misapprehension of the opinion of the Supreme Court upon which it was based, as well as a misapprehension of the Trade-Mark Act (Comp. St. § 9485 et seq.).

[2] An ordinary surname may not be appropriated as a trade-mark by any one person as against others of the same name "who are using it for a legitimate purpose." Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247. In Columbia Mill Co. v. Alcorn, 150 U. S. 460, 466, 14 Sup. Ct. 151, 153 (37 L. Ed. 1144) the court said:

"A person may put his own name upon his own goods, notwithstanding another person of the same name may, in that name, manufacture and sell the same or similar articles."

Each party, of course, must clearly indicate the origin and identity of his product. In Howe Scale Co. v. Wyckoff, Seamans, etc., 198 U. S. 118, 138, 25 Sup. Ct. 609, 613 (49 L. Ed. 972) the court sustained the right of a corporation to the use of the surname "Remington," saying:

"In our opinion the Remingtons and Sholes made a reasonable and fair use of their names in adopting the name 'Remington-Sholes' for their machine, and in giving that name to the corporation formed for its manufacture and sale."

In its opinion the court quoted with approval the following:

"A body of associates who organize a corporation for manufacturing and selling a particular product are not lawfully entitled to employ as their corporate name in that business the name of one of their number when it appears that such name has been intentionally selected in order to compete with an established concern of the same name, engaged in similar business. * * * This of course assumes not only that the name selected was calculated to deceive, but that the selection was made for that purpose."

In Waterman Co. v. Modern Pen Co., 235 U. S. 88, 94, 35 Sup. Ct. 91, 92 (59 L. Ed. 142) it was ruled that, when the use of his own name

upon his goods by a later competitor leads the public to confuse them with the goods of an older and well-established firm of that name, the law will require him to take reasonable precautions to prevent mistake, and that "there is no distinction between corporations and natural persons in the principle, which is to prevent a fraud."

[3] The purport of these decisions is that, while an individual or corporation has no right to the exclusive appropriation of a name to which others have a common right of use as a surname or corporate title, the later competitor must take reasonable precautions to prevent confusion.

[4] It follows from what we have said that the provision of the Trade-Mark Act (Comp. St. § 9490) that no mark shall be registered which "consists merely in the name of an individual, firm, corporation, or association not written, printed, impressed or woven in some particular or distinctive manner," was not intended to permit, and does not permit, an individual, firm, corporation, or association of another name measurably to appropriate the good will of an established individual, firm, corporation, or association built up under his or its name, through adoption of that or a similar name as a trade-mark. Rogers v. International Silver Co., 34 App. D. C. 410; Mansfield Tire & Rubber Co. v. Ford Motor Co., 44 App. D. C. 205; In re United Drug Co., 44 App. D. C. 209; Howard Co. v. Baldwin Co., 48 App. D. C. 437. The real purpose of this provision was to permit an individual, firm, corporation, or association to register his or its name as a trade-mark, provided such registration be so accomplished as not to prevent a like use of the name by others similarly entitled.

In the present case the appellant, for more than 15 years prior to the adoption by appellee of the word "Nationals," had extensively advertised and sold, "under the name National Cigar Stands Company," cigarettes, cigars, smoking tobacco, and other tobacco products, and it is apparent that the word "National," as the predominating feature of appellant's name, necessarily had come to indicate to the purchasing public its particular product. When, therefore, Frishmuth Bro. & Co. adopted for its mark, on goods of the same descriptive properties, the plural of this distinguishing word, the conclusion is irresistible that it did not do so in good faith, but, on the contrary, for the purpose of appropriating the good will of appellant. Had this word been a distinctive feature of appellee's corporate name, which had been selected for no ulterior purpose, a different case would have been presented; but, even then, it could not have been said that the manner in which appellee printed its mark constituted compliance with the statute. We have said that the controlling principle underlying the requirement of the statute is that a mere name may not be registered, unless so displayed as to give such a distinct impression to the eye of the ordinary observer that the significance of the mere name is outweighed. In re Artesian Mfg. Co., 37 App. D. C. 113.

There is nothing in Beckwith v. Com. of Patents, 252 U. S. 538, 40 Sup. Ct. 414, 64 L. Ed. 705, inconsistent with what we have said. That case involved the registration of a composite mark, carrying cer-

tain, descriptive matter, which had been disclaimed. The Supreme Court said:

"No question of patent right or of unfair competition, or that the design of the trade-mark is so simple as to be a mere device or contrivance to evade the law and secure the registration of nonregistrable words, is involved. Nairn Linoleum Co. v. Ringwalt Linoleum Works, 46 App. D. C. 64, 69."

[5] It is clear, therefore, that the question now before us was not involved in the Beckwith Case. The object of the Trade-Mark Act was to protect honest dealers; to prevent, and not promote, confusion. The conclusion reached by the Assistant Commissioner would completely frustrate that object. The decision, therefore, is reversed, and the opposition sustained.

Reversed.