## HOLLAND FURNACE CO. v. NEW HOLLAND MACH. CO.

District Court, E. D. Pennsylvania.  October 15, 1927.

No. 4007.

1. Trade-marks and trade-names and unfair competition ⬳70(3)—Plaintiff, selling furnaces under name "The Holland," may enjoin use of name "New Holland."

Plaintiff, selling furnaces under name "The Holland," *held* entitled to restrain defendant from using name "New Holland" as name or trade-mark for its furnaces, notwithstanding that such name forms part of defendant's corporate title, since similarity would cause confusion, deceive customers, and create impression that defendant's furnace was new and improved form or style.

2. Trade-marks and trade-names and unfair competition ⬳97—Evidence that defendant had discontinued use of name similar to plaintiff's in selling furnaces will not deprive plaintiff of right to injunction restraining such use.

In suit by plaintiff, selling furnaces under name "The Holland," to enjoin defendant from using name "New Holland," evidence that defendant's use of such name had already been discontinued will not deprive plaintiff of right to injunction.

3. Trade-marks and trade-names and unfair competition ⬳75—Plaintiff's rights are invaded, if consideration of defendant's goods leading to purchase has been induced by unfair means, even though buyer learns whose goods he is buying before the purchase.

If by unfair means purchasers have been induced to consider defendant's goods, which consideration leads to final purchase, there has been an invasion of plaintiff's right, even though before the purchase is made the buyer learns whose goods he is buying.

4. Trade-marks and trade-names and unfair competition ⬳93(3)—Evidence of specific cases of deception is unnecessary on issue whether trade-marks would probably cause confusion.

On issue whether trade-marks used by parties are such that defendant's acts will likely cause confusion, evidence of specific cases of confusion or deception is not required.

5. Trade-marks and trade-names and unfair competition ⬳73(2)—Use of name "New Holland Machine Company" on furnaces held likely to cause confusion, in view of prior sale of furnaces by Holland Furnace Company.

Use on furnaces of name of defendant, "New Holland Machine Company," *held* likely to

cause confusion in trade, and result in deception of prospective purchasers, in view of previous advertisement and sale of similar furnaces by Holland Furnace Company.

**6. Trade-marks and trade-names and unfair competition ⊛⟹73(2)—Holland Furnace Company had priority as to use of name in sale of furnaces, as against previously incorporated company of similar name, organized to manufacture farm machinery, but subsequently manufacturing furnaces.**

Holland Furnace Company *held* to have priority to use of name in sale of furnaces, as against previously incorporated New Holland Machine Company, organized to manufacture farm machinery, but subsequently manufacturing furnaces, since manufacture of furnaces is not so closely related to manufacture of farm machinery as to be within same class and of same description.

**7. Trade-marks and trade-names and unfair competition ⊛⟹73(2)—Rights of corporation to use name, as against one with similar name having priority in field, are no broader than those of natural person.**

Rights of defendant corporation to use of its corporate name in manufacture of furnaces, as against plaintiff with similar name who had priority in such field, are no broader than those of natural person proposing to use his name under same conditions.

**8. Trade-marks and trade-names and unfair competition ⊛⟹70(1)—Defendant will not be enjoined from selling furnaces similar to plaintiff's in form and appearance.**

Defendant will not be enjoined from selling furnaces like plaintiff's in form and appearance, though plaintiff had priority in field, plaintiff's rights being protected as far as possible in present state of law by injunctions restraining use of words on defendant's furnaces which would cause confusion.

In Equity. Suit by the Holland Furnace Company against the New Holland Machine Company. Decree for plaintiff for part of relief prayed for.

Howson & Howson, of Philadelphia, Pa., for plaintiff.

Theodore S. Paul, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge. The plaintiff is a Michigan corporation, having its principal office and its original manufacturing plant at Holland, Mich., at which place it has conducted the business of making warm-air furnaces since its incorporation in 1906. It now has two additional plants and more than 500 branch offices throughout the United States, from which it not only sells direct to customers, but also installs and renders maintenance service. It is the largest manufacturer of warm-air furnaces in the United States. In the last seven years its total sales have grown from $4,500,-000 to $15,500,000, and its sales in Pennsylvania from about $25,000 to nearly $2,000,-000. In 1926 it expended over $67,000 for advertising in Pennsylvania alone. More than 20 of its branch offices are located in the section known as southeastern Pennsylvania, and it has one of its manufacturing plants at Bethlehem, Pa. The plaintiff sells its furnaces under the name "The Holland," which words, while geographical in their origin, have acquired a secondary meaning, associated in the minds of the public with the plaintiff's product. The name is known in connection with the plaintiff's furnaces throughout most of the United States and particularly in southeastern Pennsylvania.

The defendant is a Pennsylvania corporation, with plant and offices at New Holland (near Lancaster), Pa. It has no branch offices. The business now carried on by the defendant was begun in 1895, at New Holland, under the name of "New Holland Machine Works." In 1903, the owners of the business incorporated under the name "New Holland Machine Company," and have ever since carried on their business at New Holland, Pa. Until October or November, 1926, the business of the defendant was confined to manufacturing and selling farm machinery, specifically feed mills, gasoline engines and trucks, circular saws, rock crushers, portable stone bins, and other similar pieces of machinery. The defendant had a foundry, and also made foundry castings to order. The defendant has never made or sold furnaces, or other closely related products. The machinery constituting the defendant's original line is not a product of the same class as, or associated in the public mind with, warm-air furnaces. The business of the defendant is principally in Lancaster county, Pennsylvania, where it has built up a good will, which, while valuable, arises out of and is related to the products above mentioned, and has very little value in connection with the sale of furnaces.

In October or November, 1926, the defendant began to manufacture and sell warm-air furnaces in Lancaster county, Pennsylvania. The furnaces made by the defendant were close imitations of the plaintiff's furnaces, both in structure and outward appearance, and bore the name "New Holland" on the door at a place corresponding to that in which the plaintiff's furnaces bears the name "The Holland." The defendant's furnaces also bear the words "New Holland Machine Company, New Holland, Pennsylvania," in the same kind of lettering and at a place corresponding to that in which the

words "Holland Furnace Company, Holland, Michigan," appear on the plaintiff's furnaces. The structural features imitated are common to the trade, and not the exclusive property of the plaintiff; but the imitation is carried considerably beyond the necessities of construction. On November 1, 1926, the defendant took into its employ an experienced salesman, theretofore employed by the plaintiff, who had a detailed knowledge of the plaintiff's furnace and its installation and sales methods. For several weeks prior to leaving the plaintiff's employ, this man was spending a large part of his time in working out plans of sales, installation, and service for the defendant. When he left the plaintiff's employ, he took with him plans relating to the construction of the Holland furnace. He also attempted to persuade a number of the plaintiff's employees to leave its employ and enter that of the defendant, and was successful in two instances. After November 1st, he was engaged in selling the defendant's furnaces, following the plaintiff's methods in all particulars, duplicating the plans of the plaintiff, and demonstrating by means of a model identical with that of the plaintiff. He has made actual sales of three or four of the furnaces.

The defendant, at the time that it entered the field of making and selling warm-air furnaces, had knowledge of the general character and extent of the plaintiff's business, and was familiar with the construction and design of the plaintiff's furnaces. The defendant's normal business had been declining for some time. Its plant was equipped to manufacture furnaces, but the furnace business was not a natural development or side line of the defendant's business. In entering the field, the defendant did so with the intent to take advantage, so far as possible, of the confusion which would naturally arise in the minds of the public from the similarity of its name to that of the plaintiff, and with the purpose of availing itself, through the medium of that confusion, so far as possible, of the reputation established by the plaintiff's advertising and the merits of its products.

Up to March 16, 1927, the defendant sold nine furnaces bearing the name "New Holland." Since that time, the name "Conestoga" has been substituted, and appears upon the furnaces in place of "New Holland," but in other particulars the furnace is unchanged, and the corporate name still appears upon it in the same place as before. Since making the change the defendant has advertised, without mentioning any name for

24 F.(2d)—48

the furnace, but prominently featuring its own corporate name in the advertisement.

[1, 2] The plaintiff's bill asks that the defendant be enjoined (a) from the use of the name "New Holland" upon its furnaces; (b) from marking its furnaces with the name of "New Holland Machine Co.," or any other name sufficiently similar to the plaintiff's to be mistaken therefor; and (c) from selling furnaces like the plaintiff's in form and appearance. Under the facts as found, the plaintiff is clearly entitled to restrain the defendant from using the name "New Holland" as a name or trade-mark for its furnaces. The fact that the similarity of this name to "The Holland" will cause confusion and deceive customers is obvious. The use of these words as a name is particularly detrimental to the plaintiff, because the impression naturally created would be that the furnace is not only made by the makers of "The Holland," but that it is a new and improved form or style. The fact that this name forms part of the defendant's corporate title does not give it any additional rights, so far as its use upon its goods as a trade-mark is concerned. Nor will testimony of the defendant's secretary and treasurer that the use of this name has already been discontinued deprive the plaintiff of its right to an injunction. Westinghouse Machine Co. v. Press Publishing Co. (C. C.) 127 F. 822. The relief asked by the plaintiff upon this point will be granted.

[3] The question of whether or not the defendant should be restrained or limited in the use of its corporate name in connection with the sale of furnaces presents greater difficulty. The conditions of the question as here presented will first be briefly stated. The defendant's name is sufficiently like that of the plaintiff to cause confusion in the trade, and to result in purchasers being misled as to whose product they are ordering. The defendant argues that, in the sale of a large and expensive piece of equipment, such as a furnace, the purchaser will naturally make a more thorough investigation than when he buys a smaller and cheaper article, and this is true; but if, by unfair means, purchasers have been induced to consider the defendant's goods under the impression that they are the plaintiff's, and if this consideration leads to the final purchase of the goods, there has been an invasion of the plaintiff's rights even though, before the purchase is finally made, the buyer learns whose goods he is buying. The plaintiff is just as much damaged as though the false impression existed throughout.

[4, 5] Evidence of specific cases of confusion or deception is not necessary. "The fact that no actual cases of confusion are proved is not conclusive on the court. Regardless of proof of this sort, it must decide on the facts as to the marks used by the parties, and on the evidence of the market conditions surrounding the everyday use of the marks, whether or not the defendant's acts will be likely to cause confusion." Nims, Unfair Competition and Trade-Marks, § 335. The word "Holland" is so distinctly the feature of the title that the other differences will be overlooked. I therefore find it to be a fact that the use of the defendant's name is likely to cause confusion in the trade and result in the deception of prospective purchasers.

[6] The plaintiff has priority in the field in which the conflict occurs. As the defendant was incorporated before the plaintiff, there can be no question as to the good faith of the incorporators in originally adopting the defendant's corporate name. In this respect, the case differs in its facts from Baker v. Baker (C. C. A.) 115 F. 297, and many other cases, in which the very act of selecting the name was a fraud. It is the contention of the plaintiff, however, that this difference is not material, and that, by deliberately entering into a field occupied by the plaintiff and new to the defendant, the defendant puts itself in precisely the same position as though it had been newly incorporated under the name which the plaintiff seeks to enjoin. If this contention is correct, and I think it is, the importance of priority in that field is apparent.

The defendant's counsel argues that the manufacture of furnaces is so closely related to the manufacture of farm machinery as to make it a natural and logical expansion of that business. He says that, inasmuch as the business was in existence long before the plaintiff's, the defendant is entitled to priority, not only in the original, restricted field, but in all naturally allied lines. In support of this contention, defendant relies upon Walker v. Walker Bros. Co. (C. C. A.) 271 F. 395, and Charles Broadway Rouss, Inc., v. Winchester Co. (C. C. A.) 300 F. 706. I do not think that these cases would sustain the defendant in his position in this case, even if it were to be held that it is in a field naturally related to its original field or a logical side line. In the Walker Case, defendant and plaintiff manufactured the same article. The defendant concededly had the right to use its own name in the field. The point at which the plaintiff sought to enjoin it was the expansion of its business from a retail to a wholesale business, and there was no circumstance of similarity, likeness of labels, etc., indicating an intention to appropriate the plaintiff's good will.

In the Winchester Case, the basis of the decision was that there was no likelihood of confusion in the trade, and that the defendant had no purpose to appropriate the good will attaching to the plaintiff's business. It may be that the court in that case considered the sale of shirts by the Winchester Company (heretofore engaged in selling firearms and sporting goods) as a natural expansion of the business, but even then what was said was: "We think that the plaintiff * * * has a right to insist that the defendant, which has come later into the same field with the sale of its shirts, shall take such reasonable precautions as are commercially practicable and necessary to prevent any unlawful diversion to it of the plaintiff's custom." I have found it a fact that the manufacture of furnaces is not so closely related to the manufacture of farm machinery as to be within the same class and of the same description, and it follows that the plaintiff has priority and the defendant is a newcomer.

[7] In this situation, the rights of the defendant corporation to the use of its corporate name are no broader than those of a natural person proposing to use his name under the same conditions. "But if every man has the right to use his name reasonably and honestly, in every way, we cannot perceive any practical distinction between the use of the name in a firm and its use in a corporation. It is dishonesty in the use that is condemned, whether in a partnership or corporate name, and not the use itself." Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 136, 25 S. Ct. 609, 612 (49 L. Ed. 972). The limitations upon the right of a natural person to use his name, either by itself or manufactured into a corporate title, where such use will mislead the public and interfere with plaintiff's rights, were defined by the Supreme Court in Waterman Co. v. Modern Pen Co., 235 U. S. 88, 94, 35 S. Ct. 91, 92 (59 L. Ed. 142): "But, whatever generality of expression there may have been in the earlier cases, it now is established that, when the use of his own name upon his goods by a later competitor will and does lead the public to understand that those goods are the product of a concern already established and well known under that name, and when the profit of the confusion is known to and, if that be material, is in-

tended by the later man, the law will require him to take reasonable precautions to prevent the mistake."

In the case at bar, in spite of the denials of the defendant's officers, it is impossible to come to any conclusion other than that the defendant entered the furnace business with full knowledge that the goods of the plaintiff were already established and the plaintiff well known in this field. The extent of the plaintiff's advertising and business in Pennsylvania alone, the number of its sales officers within a radius of 100 miles from the defendant's plant, and the fact that it was the largest concern in the world of that particular kind, coupled with the evidence of the defendant's officers that in designing their furnace they "proceeded to choose from well-known types of furnaces of standard construction those features which they deemed would make an efficient and economical high-grade warm-air furnace," and that they "investigated a great many types of furnaces," and that "our plan was to devise a new furnace, taking from the various types of furnaces features open to the public to use," leaves little room for doubt on this point. It must also be found that the defendant intended to profit from the confusion which would naturally arise from the similarity of its name to that of the plaintiff when used in connection with the furnace business.

Besides the general knowledge which the defendant must have had of the plaintiff's business, other facts pointing to this conclusion are the close imitation of the appearance of the plaintiff's furnace by the defendant, the employment of the plaintiff's salesman to organize its business, the adoption of methods identical to those of the plaintiff, and the unnecessary repetition and featuring of its corporate name in its newspaper advertisements after it had discontinued the use of its trade-mark upon its furnaces. In Elgin National v. Illinois Watch Case Co., 179 U. S. 665, 674, 21 S. Ct. 270, 274 (45 L. Ed. 365), the court said: "Such circumstances must be made out as will show wrongful intent in fact, or justify that inference from the inevitable consequences of the act complained of." In the opinion of the Waterman Pen Co. Case, quoted above, Mr. Justice Holmes doubted the materiality of the intent where the consequences of the defendant's acts were obvious to him. If the intent in this case be material, there is plenty of evidence from which it may be concluded that the inevitable consequences of the defendant's entry into the furnace business under their own name would be to cause confusion, and to give them the benefit of the plaintiff's advertising and reputation.

In Moline Plow Co. v. Omaha Iron Store Co. (C. C. A.) 235 F. 519, 524, it was said: "The duty is imposed upon every manufacturer or vendor, especially when he enters upon a field previously occupied by his competitor, to so distinguish the articles he makes, or the goods he sells, from those of his rival, that neither their names nor their dress will be likely to deceive the public, or to mislead the ordinary buyer into purchasing his goods as those of his competitor, or create confusion in the trade between the rival articles." In a case such as the present, where the defendant has not only not attempted to avoid the confusion, but has actually taken steps to aggravate it, he may be required to couple the use of his name with such words or phrases as may be necessary to prevent unfair diversion to him of another's business. This may not be complete and adequate protection, but I find no authority going to the extent of holding that either an individual or a corporation can be deprived absolutely of the right to use his own name in a line of business, even though it is coupled with an unfair intent. An order will be granted, enjoining the defendant's displaying its corporate name upon its product, unless accompanied by words or phrases which will clearly distinguish it from the plaintiff's.

[8] It seems that the above is about as far as the plaintiff's remedy can extend. Under the circumstances of the case, I do not think that defendant should be restrained from selling its furnaces in the form in which it does. The imitation of the appearance has a direct bearing on the defendant's intent of going into the field, but the injunction allowed will in the judgment of the court protect the plaintiff's rights as far as they can be protected in the present state of the law. So far as the prayer for an accounting is concerned, the actual loss incurred through the sale of the few furnaces which the defendant has placed upon the market is so small as not to warrant further taking of testimony.

A decree may be submitted in accordance with the foregoing.