**SWIFT & COMPANY, Plaintiff,**

v.

**T. W. SWIFT COMPANY and Thomas W. Swift, Defendants.**
**Civ. A. No. 472.**

United States District Court
M. D. North Carolina.

Sept. 8, 1954.

Ratcliff, Vaughn, Hudson, Ferrell & Carter, Winston Salem, N. C., Nims, Martin, Halliday, Whitman & Williamson, Wallace H. Martin and Mansfield C. Fuldner, New York City, for plaintiff.

Womble, Carlyle, Martin & Sandridge, Winston Salem, N. C., for defendants.

HAYES, District Judge.

This is a suit by the plaintiff for an injunction to restrain the defendants from infringing plaintiff's trade-mark and from engaging in unfair business practices. After alleging that the plaintiff has obtained certain trade-marks through the use of "Swift" and "Swift's" and its long history in the sale of products under these names the essence of the complaint is: "Upon information and belief, defendants, well knowing the facts herein above alleged, and intending, contriving and designing to trade upon the reputation and the goodwill established by plaintiff * * * have sold and are selling in the City of Winston Salem and in the State of North Carolina and elsewhere in interstate and intrastate commerce, in competition with plaintiff, liquid shampoo, liquid hair tonic and liquid dandruff treatment * * *."

Thomas W. Swift is the sole owner and manager of T. W. Swift Co. T. W. Swift was a salesman for the Jeris Co. which manufactures hair tonic, shampoo, after shave lotion and face powder. He represented this company for 15 years before 1946 in the Southeast part of the United States. In 1946 he went into business for himself and organized the corporate defendant. In order to get capital he became associated with T. W. Garner Food Co. and the stockholders of that Company provided one half the capital to form the corporate defendant. There was no thought on the part of

Garner in selecting the name T. W. Swift Co. to identify that corporation or its products with the plaintiff. Garner sold out his individual interest in 1949 and has no interest therein.

The individual defendant Thomas Wesley Swift was born in Greensboro, N. C. His father was Superintendent of Schools there and he was educated in Greensboro High School and Duke University. His name is his natural name given him by his parents at birth.

The plaintiff concedes that there is an absence of any fraud on the part of the defendant. The witnesses for the plaintiff and the witnesses for the defendants agree that there was no attempt by the defendant to palm its product off as that of plaintiff, nor did the defendant nor anyone acting in his behalf at any time represent his product to be the product of the plaintiff.

The gross annual volume of sales of the corporate defendant is less than $30,-000. It has no employees except the individual defendant who acts as President, Manager and Salesman. It has no office except a desk in the individual defendant's two room apartment. Mrs. T. W. Swift does the little correspondence in addition to attending her duties as a teacher at one of the Forsyth County Schools. The corporation has no manufacturing plant but gets its product bottled by the Yerkes Co.

The plaintiff's local manager testified that the defendant had not deprived the plaintiff of any trade and that the only way the plaintiff had been hurt "was the extra trouble to get the mail back and some of the telephone calls."

The plaintiff is an Illinois Corporation having a place of business in Chicago and has used the name Swift and Co. since 1885. It has many trade-marks registered covering the expressions "Swift's" and "Swift".

In 1952 its products were sold in excess of $2,000,000,000. In 1952 its soap products sold in North Carolina were in excess of $200,000. It sells fertilizers and meat products and soap. It has never sold for retail trade any hair tonic, liquid shampoo and liquid dandruff treatment. It did sell bar soap to barber shops and beauty parlors which was capable of being used by them in manufacturing shampoo, with the exception that after this suit was brought the plaintiff placed on the market for retail sale in 4 ounce bottles a product designated as Amazon Liquid Shampoo, Exhibit 32.

Indeed Mr. Spillers testified that the defendant had not interfered in the way of competition with any product of the plaintiff that the plaintiff had been stocking in the last five years at Winston Salem and Mr. Westering, who is the head of the Soap Department of the plaintiff stated that they were not only not engaging in the sale of liquid shampoo at the retail level but "We have no idea of coming out with a liquid shampoo retail-wise. Our primary business interest is liquid soaps to the jobber level, to the bulk people. That is our stock and trade. We are more interested in bulk soaps, industrial soaps, than we are retail-wise."

Defendant's three products are sold exclusively for retail trade under the name of "Solvene Hair Tonic", "Swift's Dandruff Treatment" and "Solvene Shampoo". The three products are sold in cardboard holders designed and prepared by the defendant which has a tendency to magnify the word "Swift" in respect to the three products. The container is designed for "Swift" Dandruff Treatment product to be placed in the center thereof. The arrangement is calculated to create the impression that the products are Swift or Swift's products and in this respect and in this respect alone is there any evidence to justify any likelihood of depriving the plaintiff of any good will or the enjoyment of its trademarks. This practice on the part of the defendant should be terminated.

The plaintiff concedes that the defendant should be permitted to use his name Thomas W. Swift but objects to the use of the name T. W. Swift and Co. and is willing for T. W. Swift and Co. to use the name of Thomas W. Swift and

Co. but wants each word in the name given the same prominence and emphasis. However, the court is of the opinion that a customer who is dumb enough to confuse T. W. Swift and Co. with Swift and Co. would not likely be enlightened by changing it to Thomas W. Swift and Co. Indeed the evidence of unfair competition here is so inconsequential and the prospect of injury from it in the future is so speculative that the court seriously doubted the wisdom of granting any injunctive relief whatsoever, but being of the opinion that the use of the cardboard container as above described is likely to create in the mind of a customer the belief that the product is the plaintiff's product, injunctive relief is granted in this restricted phase.

In arriving at these conclusions I have been guided by Standard Brands v. Eastern Shore Canning Co., 4 Cir., 172 F.2d 144; Arrow Distilleries v. Globe Brewing Co., 4 Cir., 117 F.2d 347 and in the form of decree by Johnson & Son v. Johnson, 2 Cir., 116 F.2d 427 and Waterman Co. v. Modern Pen Co., 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142 and American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317.