**PUROFIED DOWN PRODUCTS CORP., Plaintiff,**

v.

**PURO DOWN INTERNATIONAL OF NEW JERSEY CORP., and Arthur Puro, Defendants.**

No. 81 C 2382.

United States District Court, E. D. New York.

Jan. 12, 1982.

Schulte Roth & Zabel by David M. Brodsky, Robert M. Abrahams, Catherine Samuels, and Aegis J. Frumento, New York City, for plaintiff.

Hubbell, Cohen, Stiefel & Gross, P. C. by Myron Cohen, New York City (Philip Young, New York City, of counsel), for defendants.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This is an action for trademark infringement and unfair competition, jurisdiction over which is based on 15 U.S.C. § 1121. Plaintiff, Purofied Down Products Corp. (Purofied Down), seeks a preliminary injunction against defendant Puro Down International of New Jersey Corp. (Puro Down), to halt the use by defendant of its current trade name. Following are the undisputed facts as set forth in the parties' affidavits and materials submitted on the instant motion.

Purofied Down had its beginnings as a family business in the late 1930's. The original corporate name was Puro Feather & Down Corp., and its principal business from 1939 to 1943 was making pillows for the United States armed forces. In 1943 Purofied Down was formed by five Puro brothers and began manufacturing for public consumers a variety of bedding items such as pillows, comforters and decorative cushions.

From 1944 through 1966 defendant Arthur Puro served as a vice president and member of the board of Purofied Down, holding substantial responsibilities in plant management, purchase of raw materials and sales of finished products. From 1967 to 1970 defendant Arthur Puro was disassociated with Purofied Down, but in 1970 he became president of plaintiff corporation. He remained in this capacity until August 1971 when he and one of his brothers were locked out of plaintiff's headquarters in New York City under circumstances not revealed in the present record. Subsequent to his expulsion Arthur Puro has had no involvement with Purofied Down except as the beneficial owner of stock.

Presently, Neil Puro is the president of Purofied Down. Purofied Down engages primarily in the manufacture of filled bedding items, offering its product line to the public through major department stores such as Macy's, Bloomingdales and J. C.

Penney. Its federally registered trademarks are Purofoam, Purofied and Puron.[1] During the last five years over $100,000,000 of consumer products bearing the Purofied Down trade name or marks have been sold at the retail level. In addition, plaintiff deals on a substantial level in bulk feathers and down. Approximately 10% of its 585 employees are involved in bulk purchase, processing and sales, and during its fiscal year ending August 31, 1981, plaintiff made bulk sales of feathers and down in excess of $6,500,000 to purchasers in the United States, Western Europe and Asia.

Defendant Arthur Puro is now the president of defendant Puro Down, which has operated under its present name for eight months. Its origins are found in the bankruptcy of the Hudson Feather & Down Co. (Hudson) which was acquired, along with its subsidiaries, by the Windsor Trading Co., owned by Arthur Puro. In April 1981 Hudson came out of bankruptcy, and the following month defendant Arthur Puro changed its name to Puro Down. Defendant corporation deals exclusively in the processing and marketing of bulk feathers and down, having estimated gross sales during 1981 of over $10,000,000. Therefore, Puro Down competes directly with Purofied Down in the bulk feathers and down market.

The issue before the Court is whether defendant Puro Down may maintain its present corporate name. Plaintiff contends first that the use of the name Puro Down infringes upon plaintiff's registered marks in violation of 15 U.S.C. § 1114, and second, that it constitutes a false designation of the origin and false description of defendants' goods in violation of 15 U.S.C. § 1125(a). Plaintiff further claims that adoption of the name Puro Down violates the common law of unfair competition as well as N.Y.Gen. Bus.Law § 368–d.

From the record before the Court, it is apparent that Arthur Puro

"evinces a genuine interest in establishing an enterprise in which his own skill or knowledge can be made known to the public, ... [which] argues in favor of allowing him to use his own name in some restricted fashion." *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 735 (2nd Cir. 1978).

However, on the undisputed facts the Court finds that the name Puro Down so resembles plaintiff's trade name and marks that ordinary sellers and purchasers of bulk down and feathers, using ordinary caution, are likely to be misled as to the wholly separate nature of the two entities.[2] See *McLean v. Fleming*, 96 U.S. 245, 24 L.Ed. 828 (1877).

Since confusion is likely to result, the movant will probably succeed on the merits. Moreover, "[w]here there is ... such high probability of confusion, injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows." *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971). Here, plaintiff has submitted evidence of substantial sums expended upon advertising and developing good will. Even though such advertising has been in the retail market, confusion between the two corporations will naturally damage plaintiff in the bulk down and feather market. Therefore, the equitable requirements of probability of success and irreparable injury have been satisfied.

In *Herring-Hall-Marvin Safe Co. v. Hall's Safe Co.*, 208 U.S. 554, 28 S.Ct. 350, 52 L.Ed. 616 (1908), the owner of an established safe corporation founded by Joseph L. Hall sought an injunction against sons of Hall from using their surname in identifying a

**1.** Defendant disputes plaintiff's assertion that it uses commercially the unregistered marks Purodown and Purodown Quilt. Arthur Puro Affidavit ¶ 26, at 12.

**2.** Although plaintiff need not show actual confusion, *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 194 (1st Cir. 1980), it has submitted a proposed contract for repairs to feather washing equipment which was sent to the attention of Arthur Puro, but was mistakenly addressed to plaintiff corporation. Plaintiff's Exh. A. Actual confusion by employees of a company which services the down industry indicates the likelihood that ordinary purchasers of bulk down will be confused as as to the source of the goods.

newly formed safe company. Justice Holmes' comments are extremely apposite:

"They might have competed with it, they might have called attention to the fact that they were the sons of the man who started the business, they might have claimed their due share, if any, of the merit in making Hall's safes what they were. *White v. Trowbridge*, 216 Pa.St. 11, 18, 22 [64 A. 862]. But . . . some names and phrases, otherwise truthful and natural to use, would convey to the public the notion that they were continuing the business done by the company, or that they were in some privity with the established manufacture of safes which the public already knew and liked. To convey that notion would be a fraud, and would have to be stopped. Therefore such names and phrases could be used only if so explained that they would not deceive." *Id.* at 559, 28 S.Ct. at 351–52.

Similarly, in *L. E. Waterman Co. v. Modern Pen Co.*, 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142 (1914), the question for decision involved the right of the defendant corporation to use a personal name in selling goods similar to those of an established company. Justice Holmes expressed the applicable rule as follows:

"[I]t now is established that when the use of his own name upon his goods by a later competitor will and does lead the public to understand that those goods are the product of a concern already established and well known under that name, and when the profit of the confusion is known to and, if that be material, is intended by the later man, the law will require him to take reasonable precautions to prevent the mistake. *Herring-Hall-Marvin Safe Co. v. Hall's Safe Co.*, 208 U.S. 554, 559 [28 S.Ct. 350, 352, 52 L.Ed. 616]. There is no distinction between corporations and natural persons in the principle, which is to prevent a fraud. *Ibid. Howe Scale Co. v. Wyckoff, Seamans & Benedict*, 198 U.S. 118, 136 [25 S.Ct. 609, 612, 49 L.Ed. 972]. *Donnell v. Herring-Hall-Marvin Safe Co.*, 208 U.S. 267, 273 [28 S.Ct. 288, 289, 52 L.Ed. 481]." *Id.* at 94, 35 S.Ct. at 92.

Applying the clear guidance provided by *Herring-Hall* and *Waterman* to the instant undisputed facts, the Court concludes that while Arthur Puro has the right to use his own name in his business, he may not do so in a manner which engenders confusion with plaintiff's trade name and business. Since the close association of "Puro" with "Down" is the obvious source of that confusion, plaintiff is entitled to a preliminary injunction against further use of "Down" by defendants as part of a corporate or business name in which the name "Puro" appears. See also *Taylor Wine Co. v. Bully Hill Vineyards, Inc., supra.* The parties are accordingly directed to submit proposed forms of a preliminary injunction order within two weeks from the date hereof.

SO ORDERED.