24 C.C.P.A.(Patents)

THREE IN ONE OIL CO. v. ST. LOUIS RUBBER CEMENT CO., Inc.

Patent Appeals No. 3672.

Court of Customs and Patent Appeals.
Jan. 25, 1937.

GARRETT, Associate Judge, dissenting.

480

Edward S. Rogers, James F. Hoge, and L. B. Stoughton, all of New York City, Francis L. Browne, Dudley Browne, and Thomas L. Mead, Jr., all of Washington, D. C., for appellant.

Mason, Fenwick & Lawrence, of Washington, D. C. (Edward G. Fenwick, Edward T. Fenwick, and Charles R. Fenwick, all of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The St. Louis Rubber Cement Company, Inc., appellee, filed an application in the United States Patent Office for the registration of the trade-mark "3 In 1," which it alleged it had continuously used in its business since 1907, upon a combination adhesive cement.

The Three In One Oil Company, appellant, filed an opposition to the registration of said mark, alleging the use of the same mark since 1894 on oil used in and about homes, offices, factories, garages, and elsewhere, "as a lubricator, preserver, polisher or cleaner for metal, wool and/or leather." It also alleged the use and registration of other trade-marks, but since it is agreed that the marks are identical, it will not be necessary to set the registrations out with more particularity.

The opposer took testimony; the applicant took none.

The Examiner of Interferences dismissed the notice of opposition and adjudged that the applicant was entitled to registration, and his decision was affirmed by the Commissioner of Patents.

In this court it is conceded that appellant's prior use of the mark has been established, and that the applicant is confined to its filing date, February 27, 1933, as the earliest date of use.

The sole question presented here is, as stated by the tribunals below, the likelihood of confusion and, in determining that, whether the goods are of the same descriptive properties.

There were introduced into evidence two different sized bottles of opposer's "3 In 1" oil, and a small, rather flat, thin, tin can, with oil spout, containing "3 In 1" oil, which container, we understand, is one of the smallest sizes used by the opposer in the sale of its oil. The can is painted partly red and partly black, the ends of the container and the spout being unpainted.

The exhibit of the applicant is substantially the same height and width (if the broad side of the "3 In 1" oil can is considered) as that of the exhibit of the opposer. They resemble each other considerably in shape, size, and color, and the character of printing of the term "3 In 1" on the cans of both parties, while in slightly different form, bears a close resemblance.

Since applicant took no testimony, it is not shown for what purpose its "3 In 1" cement is used. However, in argument here by applicant, it was stressed that its cement, as is shown by the language on the can, was used to "Stick Leather to Leather, Rubber to Rubber, Rubber to Leather, Cloth to Leather, Cloth to Rubber, Cloth to Cloth."

Opposer took much testimony, including that of witnesses in trade and commerce who testified with reference to the likelihood of confusion in their business between the two products. There was also testimony of some actual confusion. In one instance a wholesaler and retailer in hardware and paint testified that he had a customer order "3 In 1" cement from his company and that he immediately wrote to the Three In One Oil Company and gave them an order, and on learning that the cement was not made by the Three In One Oil Company canceled the order. Also a letter was received by the Three In One Oil Company asking for "3 In 1" glue. One witness testified that he was a salesman for opposer and that he asked the proprietor of a store if he kept an article by the name of "Three In One" and he replied, "Why, yes, we have an article by the name of 'Three In One Cement.' Is that made by you people?"

Opposer has further shown that since 1894 it and its predecessor spent many mil-

lions of dollars in advertising its "3 In 1" oil; that it advertised it as having three principal purposes—lubrication, cleansing, and polishing, and that it cleans and polishes wood, leather, metal, and glass; that it is advertised as being a handy household article having 79 uses; that it is sold throughout the United States and the world at large; that it is advertised for use in the home, shop, farm, and garage, and as being composed of a scientific blend of animal, mineral, and vegetable oils. Some of opposer's witnesses testified that they had never seen or heard of the "3 In 1" cement, but stated in substance that if it was a good cement, especially if it was manufactured by the Three In One Oil Company, they would like to handle it and could appropriately handle it along with "3 In 1" oil and such articles.

That portion of section 5 of the Trade-mark Act of February 20, 1905, as amended, 15 U.S.C.A. § 85, with which we are here concerned, reads as follows:

"Provided, That trade-marks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered."

This court has often said that the purpose of the Trade-Mark Act is to prevent confusion. Unquestionably, it was the view of the Congress, when the act was passed, as well as the view of the courts in construing the act, that confusion will not result in the concurrent use of identical or similar trade-marks if the goods are not of the same descriptive properties. This being the view of the Congress, it would seem to follow that it must have regarded goods as belonging to the same class or as having the same descriptive properties if they were so similar that confusion resulted or was likely to result from the concurrent use of similar or identical marks in their sale. Congress could not have meant by the term "merchandise of the same descriptive properties" only such goods as were identical. The first part of section 5, supra, reads:

"Sec. 5. That no mark by which the goods of the owner of the mark may be distinguished from other *goods of the same class* shall be refused registration as a trade-mark on account of the nature of such mark unless such mark * * * [Italics ours.]"

This court has frequently said that in determining the meaning of the phrase "merchandise of the same descriptive properties," we must consider it along with the above-quoted phrase "goods of the same class."

Trade-marks are for the purpose of distinguishing goods and indicating their origin. If an applicant's mark does not distinguish his goods from goods of the same class of another which are sold under the same or a similar trade-mark so as to eliminate the likelihood of the confusion which Congress had in mind, it should not be registered. Therefore, in registration proceedings, the determination of whether goods are of the same descriptive properties may properly involve the important consideration of whether confusion as to the origin of the goods is likely to result.

In California Packing Corp. v. Tillman & Bendel, Inc., 40 F.(2d) 108, 110, 17 C. C.P.A. (Patents) 1048, we said:

"On the other hand, we think the great weight of authority is to the effect that 'the dominant purpose of that part of the section here involved is the prevention of confusion and deception,' and that in determining the meaning of the phrase 'merchandise of the same descriptive properties,' controlling consideration must be given to the question as to whether or not the goods are similar to the extent that confusion, deception, or mistake will result to the public or to purchasers, *and if the goods are sufficiently similar, that the use of an identical trade-mark on the goods of both will result in the goods of one being regarded by the purchaser as the goods of the other, that they are to be regarded as goods of the same descriptive properties."* [Italics new here.]

Our decision in B. F. Goodrich Co. v. Clive E. Hockmeyer et al., 40 F.(2d) 99, 102, 17 C.C.P.A.(Patents) 1068, handed down by this court on the same day as California Packing Corp. v. Tillman & Bendel, Inc., supra, is to the same effect. In the Goodrich Co. Case, supra, this court stated that "the question of confusion is necessarily present, and, in the final analysis, is the controlling factor," and quoted with approval from California Packing

482

Corporation v. Price-Booker Mfg. Co., 52 App.D.C. 259, 285 F. 993, 995, the following:

"The paragraph implies that, if the mark would not distinguish the goods of its owner from other goods of the same class, it should be denied registration. * * * We think the dominant purpose of the part of the section here involved is the prevention of confusion and deception. If the use of the later mark would be likely to produce either, the mark should be rejected. Whenever it appears that confusion might result, it is because the goods have the same descriptive properties. We reason from the effect to the cause."

As we have frequently said, the question of the likelihood of confusion is most often a question of opinion. The Patent Office and appellate courts have been determining for years whether confusion is likely to flow from the concurrent use of marks on goods of the same descriptive properties without the aid, most of the time, of any proof whatever of actual confusion. In the instance at bar, however, we have proof of some confusion which actually existed.

The applicant suggests that there is not much proof of confusion shown when the tremendous amount of business done by opposer during the long period of time in which the applicant has used its mark is considered. There is nothing in the record, other than what appears in appellee's application, to show that the applicant has been using its mark continuously over a long period of time. There is a reference in the record to a letter written in 1924 by the opposer to the applicant requesting applicant to desist from the use of the "3 In 1" trade-mark on cement. There is no showing in this record that applicant did not desist. As above stated, it took no testimony to show that it had used the mark prior to the date of filing. It is significant, however, that the actual confusion which was proven occurred at a time not long prior to the date of the applicant's application for registration.

Not only has some actual confusion been proven, but we are of the opinion that, regardless of this fact, the concurrent use of the mark "3 In 1" on the two articles in controversy would be likely to lead to confusion as to the origin of the products. This record shows that "3 In 1" oil is an article of common everyday household use. See Lever Bros. Co. v. Riodela Chemical Co., 41 F.(2d) 408, 411, 17 C.C.P.A.(Patents) 1272. A cement for repairing shoes, rubber boots, and other household articles containing rubber, leather, or cloth, doubtless would be used by the same class of people, sold in the same class of stores, at a low price, and, by reason of the nature of the article, purchased casually without much investigation. Obviously, a hardware store which sold a repair cement of this character would handle a household oil like the "3 In 1" (the testimony is to this effect); that a casual purchaser seeing "3 In 1" oil and a "3 In 1" repair liquid cement in cans of substantially the same size (and for that matter they might be identical in size and appearance) would conclude that there was a common origin of the two articles. In order to prevent registration, it is not necessary that the casual purchaser in each instance should be confused. The test is, would there be likelihood of such a confusion resulting as would damage the owner of the mark. California Packing Corp. v. Tillman & Bendel, supra; Sutter Packing Co. v. Piggly Wiggly Corporation, 64 F.(2d) 1006, 20 C.C.P.A.(Patents) 1069, and cases therein cited.

That confusion would be likely to exist where the same or similar trade-marks were used on certain kinds of goods which had different characteristics was held in the following cases: Noll v. Krembs, 73 F.(2d) 491, 22 C.C.P.A.(Patents) 722—medicated textile used for the treatment of the hair and scalp, and a preparation for coughs and colds; Kotex Co. v. McArthur, 45 F.(2d) 256, 18 C.C.P.A.(Patents) 787—vaginal syringes and sanitary napkins; Vick Chemical Co. v. Central City Chemical Co., 75 F.(2d) 517, 22 C.C.P.A.(Patents) 996—insecticide and pharmaceutical preparation; Eastman Photographic Materials Co. v. Kodak Cycle Co., 15 Reports Patent Cases 105—bicycles and cameras; Wall v. Rolls-Royce of America, Inc. (C.C.A.) 4 F.(2d) 333—radio tubes and automobiles, aeroplanes, and parts thereof; L. E. Waterman Co. v. Gordon (C.C.A.) 72 F.(2d) 272—fountain pens, mechanical pencils, etc., and razor blades; Revere Sugar Refinery v. Salvato, 48 F.(2d) 400, 18 C.C.P.A.(Patents) 1121—sugar on the one hand, and meat products, condiments, canned and fresh vegetables, fruits, fish, and other grocery goods on the other; Cheek-Neal Coffee Co. et al. v. Hal Dick Mfg. Co., 40 F.(2d) 106, 17 C.C.P.A.(Patents) 1103—coffee and tea on the one

hand, and horse-radish, olive spread, etc., on the other; and Sun-Maid Raisin Growers of California v. American Grocer Co., 40 F.(2d) 116, 17 C.C.P.A.(Patents) 1034—flour on the one hand, and raising, raisin syrup, and baking powder on the other.

No reason is suggested by the applicant why it selected "3 In 1" as its trade-mark for its combination adhesive cement. Nothing has been pointed out by either side that makes the notation "3 In 1" particularly valuable to the applicant in the sale of its article except that applicant might profit by resulting confusion. As we and other courts have frequently said, the field from which trade-mark adopters may draw for appropriate marks to indicate the origin of their goods is practically unlimited. In Proctor & Gamble Co. v. J. L. Prescott Co., 49 F.(2d) 959, 18 C.C. P.A.(Patents) 1433, it was said in substance that where, under circumstances quite similar to those at bar, the same mark or a mark similar to that of another is adopted with full knowledge that the other mark was in existence without any explanation as to why it was adopted, it was fair to infer that the newcomer sought to profit by the confusion that would result. See Harris Drug Co. v. Plough Chemical Co., 54 F.(2d) 967, 19 C. C.P.A.(Patents) 876.

In Lever Bros. Co. v. Riodela Chemical Co., supra, where "Tex" was adopted as a trade-mark for a washing and cleaning compound with the knowledge of the existence of the use of "Lux" as a trademark on soap and soap powder, this court said:

"So here, why did appellee select the word 'Tex' when there was a multitude of words that were short and easy to remember, bearing no similarity to the word 'Lux,' any one of which might have been adopted by appellee without any probability of causing confusion or mistake in the mind of the public? If its sole purpose in adopting a trade-mark was to indicate origin of its own goods, we would expect it to select a mark having no similarity to any other used upon similar goods.

"Of course, if confusion or mistake is not likely to result from the use of the two marks, the motive of the later applicant in adopting its mark cannot affect its right to registration; but if, in the adoption and use of the mark, there be a purpose of confusing the mind of the public as to the origin of the goods to which it is applied, we have a right, in determining the question of likelihood of confusion or mistake, to consider the motive in adopting the mark as indicating an opinion, upon the part of one vitally interested, that confusion or mistake would likely result from use of the mark. After all, the determination of the question of likelihood of confusion or mistake in the use of trademarks, must, as a general rule, be a matter of opinion, and not the result of testimony produced as to the existence or absence of such confusion. Therefore the tribunals of the Patent Office, and this court as a reviewing body, may, in cases where one adopts and uses a mark with the motive of confusing the mind of the public, consider that motive as one of the factors in determining the question of whether use of such mark is likely to cause confusion or mistake in the mind of the public."

In passing upon questions of this kind, courts have always resolved the doubt against the newcomer. Surely there is sufficient doubt shown by the record before us on the question as to whether or not there is a likelihood of confusion flowing from the concurrent use of the two marks on the goods of the respective parties, as to require that the newcomer's mark should not be registered.

For the foregoing reasons, we conclude that the opposition should have been sustained and that the applicant should have been denied registration for its mark as applied for, and the decision of the Commissioner of Patents is reversed.

Reversed.

GARRETT, Associate Judge (dissenting).

The goods of the respective parties to the controversy are not of the same class, and, as of course, are not of the same descriptive properties. They have no uses in common; the results obtained by their use are wholly different—indeed, if the functions of the goods may be compared at all, they are more or less antagonistic. While appellee took no testimony, the petition for registration shows that its product is an adhesive cement, and the specimen, filed as required by law, showing the manner in which the mark is actually used, recites that the cement "Will stick leather to leather, rubber to rubber, rubber to leather, cloth to leather, cloth to rubber, cloth to

484

cloth." Appellant's product is a lubricating oil, and, as is suggested in the brief for appellee, " * * * it is hard to conceive of products having more different uses than lubricating oil and adhesive cement." Even the containers (if the matter of containers were of importance which I do not think is the case) are entirely different in shape, so far as the exhibits before us disclose. Appellant's product is in rounded flattened cans, while that of appellee is in circular cans.

It is probable, of course, that many persons who use the one product also use the other, but that is true of numberless articles.

I cannot imagine how the slightest confusion as to origin, or as to anything else about the articles, can *reasonably* arise from the use of identical marks upon the respective products. If it does, it is due solely to the mark and not to any inherent characteristics or properties of the goods. The evidence in the record as to actual confusion is, in my opinion, so meager and inconsequential as not to require serious consideration. Evidently the proprietor of the store who replied to the inquiry of appellant's salesman, as recited in the majority opinion, "Why, yes, we have an article by the name of 'Three In One Cement.' Is that made by you people?" could not have been very greatly confused. I apprehend such testimony as that, and such testimony as is cited by the majority in the other instance would be given little weight or attention in an equity proceeding, and it should receive little here, even if, as the majority seem determined to do, we make the question of registration an equitable proceeding rather than, as I have constantly thought it to be, a purely statutory proceeding.

While the majority opinion seems to give recognition to the statutory words "merchandise of the same descriptive properties," it nowhere points to a single element inherent in the goods themselves which is the same or even similar. Reason as we may, think of the case as we will, the naked fact remains that the majority decision in the final analysis rests upon the proposition that the mark may be looked to in determining the question of "same descriptive properties" and notwithstanding the apparent recognition given the statutory phrase quoted, the decision in effect reads that phrase out of the statute. The decision means, and can mean nothing else, as I view it, that hereafter without any reference to the properties of the goods, this court will look to the mark, and if, in our judgment, the mark might create some sort of confusion, then it must follow that the goods are of the same descriptive properties.

I have never felt and do not now feel that such is a correct interpretation of the statute. Any trade-mark can be abused or misused. Both the common law and statutory law make provision for protection against abuses and misuses, and proper tribunals are provided in which to enforce remedies. It happens that this court has not so far been clothed with authority to enter the equity field. There are many very sound legal reasons why we should not try to force ourselves into it.