**SKOL CO., Inc., v. OLSON.**

Patent Appeal No. 4988.

Court of Customs and Patent Appeals.
June 22, 1945.

Rehearing Denied Sept. 26, 1945.

JACKSON, Associate Judge, dissenting.

Worthington Campbell, of New York City, E. F. Wenderoth, of Washington, D. C., and Mark N. Donohue, of New York City, for appellant.

Barthel & Bugbee, of Detroit, Mich., and Charles R. Allen, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This appeal presents two questions under Section 5 of the Trade-Mark Act of 1905, 15 U.S.C.A. § 85, to determine whether mineral water classified as a beverage is merchandise of the same descriptive properties as antiseptic sun lotion, antiseptic mouth wash, antiseptic cream, lipstick, deodorant, and Skol sun glasses which are classified as medicinal preparations; and whether "Skol," the name of appellant corporation, is appropriated as a trade-mark by registration of the mark "Skoal."

The involved marks, "Skol" and "Skoal," comprise a single word which is identical in sound, and in appearance the marks differ to the extent that appellee's mark contains the additional letter "a" and the letter "o" is enlarged and incloses an illustration of a projected hand holding a glass of effervescent liquid.

The two questions grow out of opposition proceedings instituted by appellant in the United States Patent Office in which the Examiner of Interferences sustained the opposition on the ground not only that the merchandise was of the same descriptive properties and the marks were confusingly similar; but also on the ground that registration of the mark "Skoal" was prohibited as an appropriation of appellant's corporate name.

The Commissioner of Patents, speaking through an Assistant Commissioner, reversed the decision of the examiner and dismissed the opposition on the grounds that since the merchandise was not of the same descriptive properties, the marks were not confusingly similar; and that inasmuch as "skoal" is a word defined in the dictionary and "Skol" is a "fanciful" word without significance except as appellant's name or trade-mark, the name clause of the statute did not prohibit registration of the mark "Skoal."

From the final decision of the Patent Office, appellant brings the respective holdings of the Assistant Commissioner before this Court for review.

Section 5 of the Trade-Mark Act of 1905, so far as pertinent to the issues here involved, provides:

"That trade-marks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered: Provided, That no mark which consists merely in the name of an individual, firm, corporation, or association not written, printed, impressed, or woven in some particular or distinctive manner, * * * shall be registered under the terms of this Act."

The decision rendered by the Assistant Commissioner was reported in 59 U.S.P.Q. at pages 70, 71 and in his opinion he makes the following statement:

" * * * applicant's sales of the product are 'mostly in saloons,' where it is used in making highballs. It is essentially a beverage, sold as such; and any real or fancied medicinal properties that it may possess are merely incidental."

Appellant offered the following testimony relative to the spelling, origin, and meaning of the terms which constitute the involved marks:

"Q. 112 How do you spell the name "Skol" as you use it? A. We spell 'Skol' S-k-o-l.

"Q. 113 Are there any other variants of the spelling of this word? A. There are. S-k-o with an umlaut over it -l, and S-k-o-a-l. All words come from the same origin, meaning skull, s-k-u-l-l.

"Q. 114 What is the origin of the word, if you know? A. The viking word pronounced Skol, S-k-o-l, which means skull, s-k-u-l-l. The Viking warrior, when he

killed his opponent, would scoop out the skull and use it as a drinking cup, and this became a word used by warriors in drinking to the good health of others."

The following definition of the word "skoal," it will be noted, involves the term "skol," as quoted from Webster's New International Dictionary:

"skoal (skōl), *interj.* [Dan. & Nor. *Skaal* cup, health, toast, fr ON. skāl bowl. See 1st SCALE, *n.*] An exclamation pledging health in drinking.—*n.* A salutation or toasting by crying 'Skoal!'—skoal, *v. t. & i.*"

Appellant's product was first imported from Europe in 1932 and sold in the American market under the mark "Skol." In 1936 the business was incorporated under the laws of the state of New York as Skol Company, Inc., which corporation succeeded to the ownership of the respective products which had been sold here previously under the registered or unregistered brands known as "Skol."

From 1936 to June 5, 1942, Skol Company, Inc., *spent approximately $300,000 in advertising its products* and "In this country alone," to quote the president of appellant corporation regarding the sale of its Sun Tan Lotion, "We have sold several million bottles to date, and this year [1942] * * * we should sell well over a million bottles."

The "Skol" products were ordinarily sold in drug stores, five-and-ten-cent stores, beach pavilions, resort hotels, cigar stores, general stores, and in small country towns.

A published article in the magazine, "Mademoiselle," through mistake, referred to appellant as the owner of appellee's product "Skoal."

Appellee Olson runs a bathing beach in Macomb County, Michigan, in the Mt. Clemens District, and is engaged also in bottling mineral water obtained from a nearby well. Visitors to the beach used to go to the well and help themselves. A Dr. Meyer, who had ulcers of the stomach when he was fifteen years old and was cured in Karlsbad, Bohemia, saw an analysis of the water from appellee's well and urged him "by all means to put it on the market." That was the inception of the enterprise and the water is now sold at the beach and elsewhere in *split* and other size bottles. Appellant's "Skol" Sun Tan Lotion was not sold at appellee's beach; "the bathers brought it with them."

In advertising, appellee Olson had spent, at the time of the hearing in the Patent Office, "somewhere between fifteen and twenty thousand dollars." This endeavor comprised newspaper advertising, display cards, exhibited in saloons and soft drink places; and 25,000 mail order cards addressed to, say, all the people with arthritis, whose names were on a list purchased by appellee. Pamphlets, circulars, and mediums of trade and local representation were also utilized.

The theme of this advertising emphasized the beneficial medicinal qualities of the water and the results effected, or to be effected, by its use. Thus, in appellee's Exhibit 2, we find this statement with numerous testimonials extolling the curative properties of appellee's product:

"Rheumatics, persons suffering from kidney or stomach trouble and dropsy had found relief and encouragement from this mineral water. So grateful and enthusiastic were they, that they persuaded Nels L. Olson, the owner of the Well to bottle and market it for national distribution. By this method, people all over the country could secure it whenever they so desired."

Appellee Olson testified that he had four or five hundred saloons using his product in the neighborhood of Detroit, that it was also sold in soft drink places, that sick people with arthritis use it and that it was sold in cases for home use. A statement in appellant's brief to the following effect is supported by the evidence:

"Applicant's advertising of its water as a mixer for alcoholic beverages is predicated upon the medicinal properties of the water to prevent 'morning after feeling' and to neutralize drink acidity (Applicant Exs. 3, 6). Applicant testified in response to a question by his own counsel that 'neutralizes drink acidity' meant to him that his water is 'practically the same as Alka Seltzer" (Tr. p. 66). Moreover, one advertisement of his water as 'mixer' carries with it, on the same page (Applicant Ex. 6) an article describing at length the medicinal and therapeutic properties of the mineral water."

The primary purpose of that portion of the Trade-Mark law with which we are here concerned is to prevent confusion or mistake in the mind of the public and the deception of purchasers as to the origin of goods of competing vendors. To effect that purpose, courts have given a

liberal interpretation to the statutory phrase, "merchandise of the same descriptive properties," and have held that Congress could not in the employment of that term have meant only such goods as were identical. See, Three In One Oil Company v. St. Louis Rubber-Cement Co., Inc., 87 F.2d 479, 24 C.C.P.A., Patents, 828. Therefore, many identical or similar marks have been refused registration because of confusing similarity, although the articles involved were actually different. In re Laskin Brothers, Inc., 146 F.2d 308, 32 C.C.P.A., Patents, ——.

In the sale of the merchandise here involved, the respective parties look to the general public which buys from the dealers who handle the goods. The merchandise is, or is likely to be, sold in the same class of markets, for example; drug stores, department stores, and beach pavilions. Appellant stated: "in each beach there is no pharmaceutical counter. They sell bottles of everything together, and most people just ask for a bottle of 'Skol.'" In so doing, a customer might get a bottle of mineral water when he wanted a bottle of sun tan; and if the order were given by telephone the confusion would likely be more aggravating.

■ Under the law, similarity of sound is of itself sufficient to constitute confusing similarity of marks when the marks are applied to merchandise of the same descriptive properties. Cluett, Peabody & Co., Inc., v. Denver M. Wright, 46 F.2d 711, 18 C.C.P.A., Patents, 937; Traders Oil Mill Company v. Lever Brothers Company, 100 F.2d 249, 26 C.C.P.A., Patents, 899.

It should be here noted that in his advertising appellee Olson urges:

"If your Drug Store or Grocer Cannot Supply Skoal—Phone MA. 5834 for delivery."

Generally speaking, natural mineral waters, used merely for beverage purposes, are not medicinal preparations and, therefore, do not possess the same descriptive properties as the medicinal preparations of the appellant company. However, appellee advertises his particular kind of mineral water as possessing medicinal and therapeutic properties and it appears from the record that at least some who have used appellee's mineral water for medicinal purposes, in accordance with his advertising, have found it efficacious in relieving an arthritic condition. Furthermore, the appellee testified, on direct examination, that his mineral water was practically the same as "Alka Seltzer" which is obviously a medicinal preparation.

■ Accordingly, having advertised his mineral water as possessing therapeutic and medicinal properties and having led at least a part of the public to believe that it has such properties, appellee ought not now be heard to argue, in order that he may secure the registration of a mark similar to appellant's registered mark, that his product is not medicinal in character and does not possess the same descriptive properties as medicinal preparations.

■ There can be no serious dispute as to the fact that the involved marks are identical in sound and meaning, and it is manifest that any distinction in appearance as exists between them is not of sufficient significance to effect a distinguishing feature. The record discloses that the involved merchandise is of the same descriptive properties, that the concurrent use of the respective marks thereon by the parties would be likely to cause confusion or mistake in the mind of the public, and that registration of appellee's mark probably would result in damage to appellant.

Although it is not necessary to the decision in this case, it is considered important to review the Commissioner's holding that appellant's corporate name, Skol Company, Inc., is not protected under the name clause of the statute against the registration of the word "Skoal" as a trade-mark.

■ In determining the question presented in cases of this kind, the facts of each particular case must be distinctively considered. However, as stated by this Court in a frequently cited case: "The trend of modern judicial decisions in trade-mark matters is to show little patience with the newcomer who in adopting a mark gets into the border-line zone between an open field and one legally appropriated to another. As between a newcomer and one who by honest dealing has won favor with the public, doubts are always resolved against the former." Skelly Oil Co. v. Powerine Co., 86 F.2d 752, 754, 24 C.C.P.A., Patents, 790. The record in this case discloses that appellant's business, like that of many other American enterprises, was conceived in humble circumstances and has

risen to success in nation-wide proportions through the toil and management of its founder.

Appellee in the instant case has completely appropriated the entire name of appellant corporation and the question arises if the installation by appellee of a letter "a" in the middle of appellant's corporate name, and the enlargement of its letter "o" with the inclusion therein of a hand holding a glass of effervescent liquid avoids the mandate of the statute.

It is to be here noted that in the literature distributed by appellee to promote the sale of his product, the letter "o" was used at times without enlargement over the other letters and the hand holding the glass of effervescent liquid was entirely eliminated therefrom, for example "Skoal Mineral Water Co."

The statute explicitly prohibits the appropriation of a mark which consists merely of the name of a corporation regardless of whether the mark is appropriated to merchandise of the same descriptive properties; and in determining whether an involved mark actually consists merely in the name of a corporation, such terms as "company," "incorporated," and "inc." are to be eliminated from consideration inasmuch as they do not serve to identify any corporation in particular. Holly Molding Devices v. Esquire, Inc., 148 F.2d 355, 32 C.C.P.A., Patents, ——. Furthermore, the transposition of the letters of a name, the emphasis by enlargement of one of such letters, the insertion of an additional letter or the substitution of one letter for another, such as a "y" for an "i," are not variations of sufficient significance, when an entire name has been appropriated as a mark, to avoid the mandate of the statute. See American Steel Foundries v. Robertson, Commissioner et al., 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317; Walgreen, Jr. v. Greenwald Hosiery Co., Inc., 139 F. 2d 713, 31 C.C.P.A., Patents, ——; Fyr-Fyter Co. v. William L. Barrell Co., Inc., 32 U.S.P.Q. 260; Tinker v. M. F. Patterson Dental Supply Company Co., 53 App. D.C. 27, 287 F. 1014.

In the opinion of this Court in Holly Molding Devices v. Esquire, Inc., supra [148 F.2d 357, 32 C.C.P.A. ——], the rule of law which governs the determination of the question in cases of this kind was quoted to the following effect:

"It is believed that the controlling principle underlying the requirement of the statute that a mere name, unless written or printed in a distinctive manner, may not be registered, is that the distinctive manner in which the name is displayed must be of a character as to give such a distinct impression to the eye of the ordinary observer as to outweigh the significance of the mere name."

It follows from the rule of law stated in the foregoing cases and the authorities cited therein that an individual or corporate name appropriated in its entirety cannot be registered as a trade-mark, and the mandate of the statute cannot be avoided by the alteration of such a name which leaves it substantially identical in sound, meaning, and appearance.

The statute makes no distinction in principle between the appropriation of the name of a corporation and the name of an individual, which is to prevent fraud; and despite the fact that the marketed products are totally unrelated in character, the courts will prohibit the appropriation of the name of an established concern if by such appropriation confusion as to the origin of the goods, among other things, will result in profit to the newcomer. Furthermore, the law requires the newcomer to take reasonable precautions against leading the public to understand that his goods are the product of a concern already established. See L. E. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 94, 35 S.Ct. 91, 59 L.Ed. 142.

In the instant case, the Commissioner of Patents dismissed the opposition to the registration of appellant's corporate name not on the ground that it was written, printed or impressed in some particular or distinctive manner, but on the ground that "skol" was a "fanciful" word without meaning except as appellant's name or trade-mark, whereas appellee's mark "'Skoal' is a dictionary word, defined as 'an exclamation pledging health in drinking,'" and "it thus has an appropriate suggestive significance as applied to applicant's goods."

The respective marks herein are identical in sound and when spoken as written each represents the appellant's corporate name. As hereinbefore described, each word of the respective marks is identical in meaning and derivation; and the fact that a word used in a foreign lan-

guage is not defined in the dictionaries published in and for the people of the United States does not of itself warrant the holding of the Assistant Commissioner of Patents that such a word is "fanciful" in character and without protection as a corporate name. The Assistant Commissioner of Patents was clearly in error in holding that the name clause of the statute did not prohibit registration of the mark "Skoal," inasmuch as it is in effect the appellant's corporate name and is not written or printed in such a particular or distinctive manner as to warrant its registration as a trade-mark.

Appellant contends that in the normal extension of its business it has conducted negotiations with a view to marketing a soft drink under its registered trade-mark. It is unnecessary, however, to consider the point in this opinion in view of the conclusions which have been expressed.

For the reasons stated, the decision of the Commissioner of Patents is reversed.

Reversed.

GARRETT, Presiding Judge (specially concurring).

I do not agree that the goods of the parties are of the same descriptive properties but agree that the registration sought by Olson should be denied under the name clause of the Trade-Mark Registration Act.

JACKSON, Associate Judge (dissenting).

Appellee filed in the United States Patent Office his application for registration of the notation "Skoal", in which the letter o is larger than the other letters and surrounds a hand holding a glass of effervescent liquid. The mark is applied to "natural carbonated mineral water, in Class 45, Beverages, non-alcoholic."

Subsequent to publication, appellant, concededly prior in use, filed its notice of opposition, relying upon its registered mark "Skol" applied to an antiseptic and germicide for the relief of skin irritations.

The allegations in the notice relate to the confusion in trade and name clauses of section 5 of the Trade-Mark Act of 1905, 15 U.S.C.A. § 85.

Both parties took testimony, and many exhibits were filed in the case.

It appears that appellee owned some wells in Macomb County, Michigan, and that many people drank the water. A certain doctor, who had been cured of ulcers of the stomach in Karlsbad, Bohemia, observed the analysis of the water and told appellee that it was very similar to that of Karlsbad, and advised him "by all means put it on the market," and that was the reason appellee became interested in marketing the water. The water after coming from the wells is artificially carbonated, so that it is to all intents and purposes a sparkling water such as is used for beverage purposes, either by itself or with other beverages, such as alcoholic liquors, and is sold principally in saloons, and principally advertised in publications of interest to those engaged in the liquor business.

Like most natural mineral waters, it is advertised as having an anti-acid effect upon the stomach, and also like most mineral waters it is advertised in some degree as having a beneficial effect on those who are afflicted with ailments said to result from acid conditions, such as rheumatism, arthritis, etc.

In the opinion of the Examiner of Interferences the medicinal properties of appellee's goods were no less important, he stated, than those making it suitable for use as a beverage or mixing ingredient. Therefore he concluded that many of appellee's customers would purchase his product as a medicinal preparation for internal use, and that appellant's externally-applied antiseptic and germicide were closely enough related in character as to possess the same descriptive properties, and that therefore the concurrent use of the marks would be likely to cause confusion. In support of his holding, the examiner cited four Patent Office decisions. The examiner further held, in effect, that appellee had appropriated appellant's corporate name.

Upon appeal, the commissioner reversed the decision of the Examiner of Interferences, 59 U.S.P.Q. 70, 71, and from that decision this appeal was taken.

From the nature of the goods of the parties, and the record in the case, I am unable to concur in the holding of the majority that the goods of the parties possess the same descriptive properties. I cannot bring myself to the belief that a natural carbonated mineral water used as a beverage, can possibly be considered as possessing the same descriptive properties as "lotion for preventing sunburn and for pro-

moting tanning, and for after-shaving lotion," for "antiseptic and germicide for relief of sunburn, windburn, and chapping, for cuts, blisters, cold sores, ringworm, athlete's foot, hives, burns, abrasions, scalds, and other skin irritations," and for "eye glasses." Even though appellee testified that the effect of his water was the same as that of Alka Seltzer, this to my mind clearly meant that it had anti-acid properties. Therefore, it is immaterial that the trade-marks of the parties are pronounced alike.

The case of Kroll Bros. Co. v. Rolls-Royce, Ltd., etc., 126 F.2d 495, 29 C.C.P.A., Patents, 897, has been cited as supporting appellant's contention with respect to the alleged appropriation of its corporate name. The decision there was based largely upon that of the case of American Steel Foundries v. Robertson, Commissioner et al., 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317. I find nothing in either of those cases to impel me to hold here that the doctrine concerning the appropriation of corporate names announced there is applicable. We have held many times in trade-mark litigation that each case is to be decided in view of its own facts, and that precedents are not to be relied upon. "Skoal" is a dictionary word, defined by the lexicographers as an exclamation pledging health in drinking. It surely is of appropriate significance as applied to appellee's goods. "Skol," the dominant word of appellant's corporate name, is merely a fanciful term. Appellee has adopted neither the corporate name nor any part thereof in his trademark. The statute prohibits the registration of a mark consisting "merely in the name of an individual, firm, corporation, or association not *written, printed, impressed, or woven in some particular or distinctive manner, * * * *" [emphasis added]. It is true that the names of the parties sound the same, but from the way in which the mark sought to be registered appears it clearly is printed "in [a] particular or distinctive manner."

I do not think that in the natural or normal extension of business appellant would include a mineral water. To my mind, the business of dealing in mineral waters is totally unrelated to appellant's business, and I do not believe that the use of appellee's mark as applied to his goods would cause any confusion as to origin, or that appellant would be likely to suffer damage as a result of the registration of appellee's mark.

The decision of the Commissioner of Patents should be affirmed.